**LLOYD ROYAL BELGE SOCIETE ANONY-
ME v. ELTING, Collector of Customs.**

**No. 19.**

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1932.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (Delbert M. Tibbetts and Joseph F. Luley, both of New York City, of counsel), for appellant.

George Z. Medalie, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The sum sued for here represents a penalty imposed by the Secretary of Labor under section 20 of the Immigration Act of 1924 (8 U. S. Code § 167 [8 USCA § 167], 43 Stat. 164). Appellant's steamship Caucasier arrived at the port of New York March 13, 1929, having on board an alien seaman, a member of the crew, who was examined by the immigration inspector and ordered detained. The inspector served a written order to detain four members of the crew, including this alien, for the reason that they had failed to establish that they had no intention of abandoning their calling and had not established that they were bona fide seamen. The order bore the signature of the immigration inspector as "By direction of the Immigration Officer in Charge."

The particular alien seaman for which this penalty has been imposed escaped from the vessel while it was at the port of New

York. The procedure was that the appellant was notified of the facts which appellee said indicated that a penalty should be imposed under sections 19 and 20 of the Immigration Act of 1924 (8 U. S. Code §§ 166, 167 [8 USCA §§ 166, 167]), and the appellant was notified that it would have 30 days in which to submit evidence to show why the fine should not be imposed. Appellant filed a protest, claiming that the alien seaman whom it failed to detain as ordered, possessed a seaman's book indicating that he was a bona fide seaman and had been such for two years and had signed on this ship's articles for six months, and that every precaution had been taken to prevent his escape. The Board of Review held the notice to detain sufficient and recommended that the penalty be imposed. The Assistant Secretary of Labor signed the recommendation as "So ordered." The fine was paid under protest in order to clear the ship at the port.

The questions presented by this appeal are: (1) Whether the imposition of the penalty may be had by an administrative order and whether the statutes and regulations were properly followed in so doing; (2) whether section 20 of the Immigration Act of 1924 authorizes the imposition of a fine by administrative action or whether it requires the United States or the collector of customs to bring a court action in order to have the fine judicially imposed.

Immigration laws and regulations made thereunder must be read as a whole in order that the requirement of any specific provision be effective. The appellant urges that the immigration laws constitute a uniform plan with which the appellee agrees, but argues that it must be practical. Of course, the act should be so construed as to give effect to its purpose, and the courts have endeavored to ascertain the general purposes of the law in its application to concrete cases. Section 20, like the other provisions of the Immigration Act, must be construed so as to be a useful and effective part of the immigration laws, and if possible to consider it in harmony with the other sections.

An alien seaman may not consider himself an immigrant in the sense that he is entitled to an examination before a Board of Special Inquiry. The privilege of his landing for a shore visit or his obligation to remain on the ship is determined by the immigrant inspector who conducts an examination on board the ship. Section 16 of the Immigration Act of 1917 (8 U. S. Code § 152 [8 USCA § 152]) provides that "Every alien who may not appear to the examining immigrant inspector at the port of arrival to be clearly and beyond a doubt entitled to land shall be detained for examination in relation thereto by a board of special inquiry." Section 1 of the same act (8 USCA § 173) defines an alien as any person not a native-born or naturalized citizen of the United States. Section 16 (8 U. S. Code § 152 [8 USCA § 152]) provides, in the case of an alien, that, in the event of rejection by the Board of Special Inquiry, since an appeal is permitted to the Secretary of Labor, the alien must be informed of his rights to be represented by counsel or other adviser on such appeal. Section 17 (8 U. S. Code § 153 [8 USCA § 153]) stays the action against the alien until the Secretary of Labor renders a decision on such appeal. But it would appear that, if an alien seaman is ordered to be detained and is to be accorded the rights of the alien who seeks admission as an immigrant, the vessel on which the seaman is employed would be unable to leave port before the appeal could be heard. Therefore it seems that Congress intended a more expeditious determination of a seaman's case. Congress by section 33 of the 1917 Immigration Act (8 U. S. Code § 168 [8 USCA § 168]), section 15 of the 1924 Immigration Act (8 U. S. Code § 215 [8 USCA § 215]), and section 20 of the 1924 act (8 U. S. Code § 167 [8 USCA § 167]), has placed seamen in a special class. These sections admit seamen temporarily to the United States under such regulations as the Secretary of Labor prescribes. In section 20 there is express provision for the method of detaining seamen without resort to Boards of Special Inquiry. Section 34 of the 1917 Immigration Act (8 U. S. Code § 166 [8 USCA § 166]) confirms this principle, and expressly provides for a Board of Special Inquiry hearing if a seaman is in the country and desires to prove that he is qualified to remain here permanently.

It is urged upon us that it has been the practice to treat seamen who are applying for admission to this country as immigrants differently from aliens who claim to be immigrants. The latter have always been heard by Boards of Special Inquiry in doubtful cases and the seamen have always been heard by immigrant inspectors who examine them aboard ship. This construction by the executive branch of the government of a statute which the Department enforces, gives weight to its interpretation of the statute before a court, especially if it has been of long standing. National Lead Co. v. United States, 252

U. S. 140, 40 S. Ct. 237, 64 L. Ed. 496; First Natl. Bank of Anamoose v. United States, 206 F. 374, 379, 46 L. R. A. (N. S.) 1139 (C. C. A. 8); Robertson v. Downing, 127 U. S. 607, 613, 8 S. Ct. 1328, 32 L. Ed. 269.

This court has held that seamen who do not claim to be immigrants are not entitled to a hearing by a Board of Special Inquiry. United States ex rel. D'Istria v. Day, 20 F. (2d) 302 (C. C. A. 2). And Navigazione Libera Triestina v. United States, 36 F.(2d) 631 (C. C. A. 9), indicates a similar disposition. But it is argued that a seaman who wants ordinary shore leave is different from a seaman who wants to land or reship on another vessel. We think that in the latter case the seaman is not entitled to a hearing before the Board of Special Inquiry, if he is not in the former case. The 1917 act must be considered as well as the 1924 act, and read together they are in pari materia (section 25, 1924 Immigration Act, 8 U. S. Code § 223 [8 USCA § 223]).

In The Limon, 22 F.(2d) 270 (C. C. A. 2), a seaman was ordered detained on board by an immigration inspector. There was no hearing before a Board of Special Inquiry, and this court upheld the collection of a penalty under section 33 of the Immigration Act of 1917 (8 USCA § 168). We are referred to some discussions in Congress from which it is said that the intent of Congress is shown, in the passage of the 1924 act, to provide for an examination before a Board of Special Inquiry in the case of alien seamen. These discussions are not enlightening, and we do not think that they are sufficient to change the views we express.

Section 20 of the Immigration Act of 1924 (8 U. S. Code § 167 [8 USCA § 167]) requires the master of a ship to detain on board every seaman until he has been inspected by the immigration officer in charge at the port of arrival. It requires him to detain the seaman on board after such inspection, if required "by such inspection officer." We see no objection to the officer in charge of the port delegating his duties under this section. The volume of business requires such delegation. The City of Harvard (D. C.) 52 F. (2d) 461. As stated, the fine was imposed by an assistant to the Secretary, and the appellant argues that this was a quasi judicial power and could not be delegated to a subordinate. The office of assistant to the Secretary of Labor was created by the Act of March 4, 1927 (44 Stat. 1415 [5 USCA § 613a]). It is presumed that the assistant acted within his authority and in the performance of his duty. Signing an order of arrest for deportation by an Assistant Secretary of Labor we upheld in United States ex rel. Petach v. Phelps, 40 F.(2d) 500 (C. C. A. 2). See Lew Shee v. Nagle, 22 F.(2d) 107 (C. C. A. 9). The order to detain was not carried out, and the penalty was thus incurred.

Section 20 imposes an absolute duty upon each of the persons named in the section to detain the alien seaman on board if properly required so to do. United States v. J. H. Winchester & Co., Inc., 40 F.(2d) 472 (C. C. A. 2). Subdivision (b) of section 20 (8 USCA § 167 (b) provides that proof that an alien seaman did not appear upon the outgoing manifest of the vessel or that he was reported by the master as a deserter, shall be prima facie evidence of a failure to detain. Here it is admitted that the seaman escaped having been given the hearing which the law accords and thereafter an order to detain having been disobeyed, the imposition of the fine lawfully followed. The fact that the seaman possessed a seaman's book did not entitle him to land in the United States, nor did the fact that he had been a sailor for two years and was on the consul's crew list. In endeavoring to present a workable and practical uniform plan for immigration control, Congress, by section 20 of the Immigration Act of 1924, granted the power to withhold clearance, and this we think also further justifies the argument that Congress intended to provide for an administrative imposition of the fine. The power is consistent with administrative action which is prompt as compared with judicial action. See Oceanic Steam Navigation Co. v. Stranahan, 214 U. S. 320, 333, 29 S. Ct. 671, 53 L. Ed. 1013. As indicative of this intent of Congress, provision has been made in other sections for withholding clearance and for payment of the penalty to the collector of customs. This calls for administrative action. (Immigration Act of 1917, §§ 9, 14, 18, 35, 36, 8 U. S. Code §§ 145, 150, 154, 169, 171 [8 USCA §§ 145, 150, 154, 169, 171]; Immigration Act of 1924, § 16, 8 U. S. Code § 216 [8 USCA § 216].) Therefore we think that section 20 of the 1924 Act (8 USCA § 167) was intended by Congress to be within the administrative rather than the judicial action of the government. This permitted the imposition and collection of immigration penalties by administrative action. International Mercantile Marine Co. v. Stranahan (C. C.) 155 F. 428, affirmed 214 U. S. 344, 29 S. Ct. 678, 53 L. Ed. 1024; Navigazione Libera Triestina v. United States, 36 F.(2d)

631 (C. C. A. 9); Natl. Surety Co. v. Holtzman, 43 F.(2d) 544 (C. C. A. 4).

For these reasons the judgment is affirmed.